

## LAWYERS PROFESSIONAL LIABILITY POLICY
## DECLARATIONS

| Agency: | Branch: | Policy Number: | Insurance is provided by Continental Casualty Company, |
|---|---|---|---|
| 701752 | 912 | 198279108 | 333 S. Wabash Ave. Chicago IL 60604 |
| | | | A Stock Insurance Company. |

**1.   NAMED INSURED AND ADDRESS:**

Cantor Colburn,LLP
20 Church Street
Hartford, CT  06103

**NOTICE TO POLICYHOLDERS:**

This is a Claims Made and Reported policy.  It applies only to those claims that are both first made against the insured and reported in writing to the Company during the policy period. Please review the policy carefully and discuss this coverage with your insurance agent or broker.

**2.   POLICY PERIOD:**

Inception: 10/30/2015
*at 12:01 A.M. Standard Time at the address shown above*

Expiration: 10/30/2016

**3.   LIMITS OF LIABILITY:**
*Inclusive of Claims Expenses*

Each Claim: $10,000,000
Aggregate:  $20,000,000

Death or Disability and Non-Practicing
Extended Reporting Period Limit of Liability:

Each Claim: $1,000,000
Aggregate:  $2,000,000

**4.   DEDUCTIBLES:**

Aggregate:   $See Endorsement GSL18520XXC 3/2010

*Inclusive of Claims Expenses*

**5.   POLICY PREMIUM:**

Annual Premium:                                                                                $511,114

Total Amount:                                                                                   $511,114

*Includes CNA Risk Control Credit of*
*Includes Net Protect Premium, see coverage endorsement if applicable*

**6.   FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

G-118011-A Ed. 06/2015, G-118038-A Ed. 04/2008, GSL-17467-XX Ed. 02/2010, G-118039-A06 Ed. 05/2008, G-118064-A06 Ed. 06/2015, G-118023-A Ed. 04/2008, GSL-3019 Ed. 09/2004, GSL-18520-XXC Ed. 03/2010, GSL-25759-XX Ed. 01/2011, CNA-80746-XX Ed. 11/2014, CNA-80747-XX Ed. 11/2014

**7.   WHO TO CONTACT:**

To report a claim:
CNA – Claims Reporting
P.O. Box 8317
Chicago, IL 60680-8317
Fax: 866-773-7504 / Online: www.cna.com/claims
Email: SpecialtyProNewLoss@cna.com
Lawyers Claim Reporting Questions: 800-540-0762

_____          12/1/2015
**Authorized Representative**              **Date**

G-118012-A (Ed. 03/99)

**CNA**

**LAWYERS PROFESSIONAL LIABILITY POLICY**

**THIS IS A CLAIMS MADE AND REPORTED POLICY.  IT APPLIES ONLY TO THOSE CLAIMS THAT ARE BOTH FIRST MADE AGAINST AN INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.  PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

I.    INSURING AGREEMENT

    A.    Coverage

        The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

        1.    no **Insured** gave notice to a **prior insurer** of such **claim** or a **related claim**;
        2.    no **Insured** gave notice to a **prior insurer** of any such act or omission or **related act or omission**;
        3.    prior to the date an **Insured** first becomes an **Insured** under this Policy or became an **Insured** under the first policy issued by the **Company** (or its subsidiary or affiliated insurers) to the **Named Insured** or any **predecessor firm**, whichever is earlier, of which this Policy is a renewal or replacement, no such **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of such **claim**;
        4.    there is no other policy, whether primary, contributory, excess, contingent or otherwise, which provides insurance to any **Insured** for the **claim** based on or arising out of an act or omission in the performance of **legal services** by such **Insured** or by any person for whom such **Insured** is legally liable while "affiliated" with a firm other than the **Named Insured**.  As used herein, "affiliated" includes acting as Of Counsel for a firm other than the **Named Insured**.

    B.    Defense

        The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured**'s behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**.  If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

    C.    Settlement

        The **Company** shall not settle a **claim** without the written consent of the **Named Insured**.

    D.    Exhaustion of limits

        The **Company** is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a **claim** after the applicable limit of the **Company**'s liability has been exhausted by payment of **damages** or **claim expenses** or by any combination thereof or after the **Company** has deposited the remaining available limits of liability into a court of competent jurisdiction.  In such case, the **Company** shall have the right to withdraw from the further investigation, defense, payment or settlement of such **claim** by tendering control of said investigation, defense or settlement of the **claim** to the **Insured**.

II.    LIMITS OF LIABILITY AND DEDUCTIBLE

    A.    Limit of liability - each **claim**

        Subject to paragraph B. below, the limit of liability of the **Company** for **damages** and **claim expenses** for each **claim** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations for each **claim**.

    B.    Limit of liability - in the aggregate

© CNA  All Rights Reserved.

The limit of liability of the **Company** for **damages** and **claim expenses** for all **claims** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations as the aggregate.

C.      Deductible

The deductible amount stated in the Declarations is the total amount of the **Insured's** liability for all **claims** and applies to the payment of **damages** and **claim expenses** for **claims** first made and reported to the **Company** in writing during the **policy period**.  The deductible shall be paid by the **Named Insured**, or upon the **Named Insured's** failure to pay, jointly and severally by all **Insureds.**   The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

If a **claim** is based on or arises out of the rendering of eleemosynary (pro bono) **legal services,** no deductible will apply but only where at the time of retention, there was approval by the appropriate committee or lawyer within the **Named Insured** that the matter would be handled without compensation.

D.      Multiple **insureds**, **claims** and claimants

The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount the **Company** will pay as **damages** and **claim expenses** regardless of the number of **Insureds, claims** made or persons or entities making **claims**. If **related claims** are subsequently made against the **Insured** and reported to the **Company**, all such **related claims**, whenever made, shall be considered a single **claim** first made and reported to the **Company** within the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**.

E.      Supplementary payments

Payments made under paragraphs 1., 2. and 3. below will not be subject to the deductible.   All supplementary  payments are in addition to the limits of liability.

1.      Loss of Earnings

The **Company** will reimburse each **Insured** up to $500 for loss of earnings for each day or part of a day of such **Insured's**  attendance, at the **Company's** written request, at a trial, hearing or other alternative dispute resolution proceeding, including arbitration proceeding or mediation, involving a **claim** against such **Insured**, but in no event shall the amount payable hereunder exceed $15,000 per **Insured** despite the number of days an **Insured** is in attendance, or the number of trials, hearings or arbitration proceedings that an **Insured** is required to attend.  In no event shall the amount payable per **policy period** exceed $50,000 despite the number of **Insureds** hereunder or the number of such proceedings.

2.      **Disciplinary Proceedings**

The **Company** will reimburse the **Named Insured** up to $50,000 for each **Insured** and all **Insureds** in the aggregate, for attorney fees and other reasonable costs, expenses or fees (the "Disciplinary Fees") paid to third parties (other than an **Insured**) resulting from any one **Disciplinary Proceeding** incurred as the result of a notice of such **Disciplinary Proceeding** both first received by the **Insured** and reported in writing to the **Company** either during the **policy period** or within 60 days after termination of the **policy period**, arising out of an act or omission in the rendering of **legal services** by such **Insured**.  Except as set forth below, the amount payable hereunder shall not exceed $100,000 despite the number of such proceedings.

In the event of a determination of **No Liability** of the **Insured** against whom the **Disciplinary Proceeding** has been brought, the **Company** shall reimburse such **Insured** for Disciplinary Fees**,** including those in excess of the $50,000 cap set forth above, up to $100,000.  In no event shall the amount payable hereunder exceed $100,000 despite the number of **Insureds** hereunder or the number of such proceedings.

© CNA  All Rights Reserved.

3. Subpoena Assistance

In the event the **Insured** receives a subpoena for documents or testimony arising out of **legal services** rendered by the **Insured** and the **Insured** would like the **Company's** assistance in responding to the subpoena, the **Insured** may provide the **Company** with a copy of the subpoena and the **Company** will retain an attorney to provide advice regarding the production of documents, to prepare the **Insured** for sworn testimony, and to represent the **Insured** at the **Insured's** depositions, provided that:
a. the subpoena arises out of a civil lawsuit to which the **Insured** is not a party; and
b. the **Insured** has not been engaged to provide advice or testimony in connection with such lawsuit, nor has the **Insured** provided such advice or testimony in the past.
The **Company** will pay such attorney's legal fees excluding any disbursements. Any notice the **Insured** gives the **Company** of such subpoena shall be deemed notification of a potential **claim** under Section V.A. of this Policy.

4. **Crisis Event Expense**

The **Company** will reimburse the **Named Insured** up to $20,000 for **Crisis Event Expenses** that result from a **Crisis Event** first occurring and reported in writing to the **Company** during the **policy period**.

5. Regulatory Inquiry

If, during the **policy period**, a state licensing board, self regulatory body, public oversight board or a governmental agency with the authority to regulate the **Insured's legal services** or any entity acting on behalf of such entities initiates an investigation of the **Insured** arising from an actual or alleged violation of a **privacy breach notice law** or any law referenced under the definition of **privacy injury and identity theft** that occurred in the rendering of **legal services** and which the **Insured** reports to the **Company** in accordance with Section V.A. of this Policy, the **Company** agrees to pay attorney fees, attorney costs and court costs (excluding such attorney fees and costs incurred as a result of services performed by the **Insured**) incurred in responding to the investigation. The maximum amount the **Company** will pay for such attorney fees and costs is $20,000, regardless of the number of investigations or the number of **Insureds** who are subject to such investigations.

6. Medicare, Medicaid, and SCHIP Extension Act of 2007

Subject to the definition of **damages** set forth in Section III. DEFINITIONS of the Policy, the **Company** will reimburse the **Named Insured** for attorney fees and other reasonable costs or expenses incurred in responding to a demand pursuant to the recovery rights of the Centers for Medicare and Medicaid Services (CMS) under the Medicare, Medicaid, and SCHIP Extension Act of 2007 (MMSEA). The maximum amount the **Company** will pay for such attorney fees, costs and expenses is $25,000 per **policy period**, regardless of the number of such demands or the number of **Insureds** who are subject to such demands.

F. Risk Management Incentives

In the event that a **claim** is eligible for more than one Risk Management Incentive, the **Insured** shall receive the benefit of the highest deductible credit. In no way shall this section be construed to afford more than one Risk Management Incentive per **claim**.

1. Mediation

If mediation of a **claim** takes place either without institution of arbitration proceeding or service of suit or within sixty (60) days of the institution of such proceedings or service of suit, and such **claim** is ultimately resolved for an amount acceptable to the **Insured** and the **Company** by the process of mediation, the **Insured's** deductible, applying to the **claim**, will be reduced by 50%. In no event shall the amount of the deductible waived hereunder exceed $25,000.

2. Engagement Letters

---

© CNA  All Rights Reserved.

If the **Insured** utilized an engagement letter in connection with the **legal services** that are the subject of a **claim**, and such **claim** is otherwise covered under the Policy, then the **Insured's** deductible applying to such **claim** will be reduced by 50%, provided that the engagement letter:

a.    includes, at a minimum, the following information:

      i.    a specific description of the scope of **legal services** to be performed by the **Insured**;

      ii.    the identity of all clients for whom the **Insured** agreed to perform such **legal services**;

      iii.    the fee arrangement for such **legal services**; and

      iv.    a description of the **Named Insured's** file retention and destruction policy; and

b.    was signed by all clients identified in such engagement letter prior to the **Insured's** commencement of representation of such clients for the **legal services** described in the engagement letter, but in no event more than thirty (30) days after the commencement of such representation.

In no event shall the amount of the deductible waived hereunder exceed $25,000.

G.    Pre-**claim**s Assistance

Until the date a **claim** is made, the **Company** may pay for all costs or expenses it incurs, at its sole discretion, as a result of investigating a potential **claim** that the **Insured** reports in accordance with Section V. CONDITIONS, Paragraph A, Notice, subparagraph 2, Notice of Potential **Claim**.  Such payments are in addition to the limits of liability and not subject to the deductible.

III.    DEFINITIONS

The following defined words shall have the same meaning throughout this Policy, whether expressed in the singular or the plural.  Wherever appearing in bold print in this Policy:

"**Bodily injury**" means injury to the body, sickness or disease sustained by any person, including death resulting from such injuries; or mental injury, mental anguish, mental tension, emotional distress, pain or suffering or shock sustained by any person whether or not resulting from injury to the body, sickness, disease or death of any person.

"**Claim**" means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in the rendering of or failure to render **legal services.** "**Claim**" also means      **privacy claims** and **client network damage claims**.

"**Claim expenses**" mean:

A.    fees charged by attorneys designated by the **Company** or by the **Insured** with the **Company's** written consent;

B.    all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim** if incurred by the **Company**, or by the **Insured** with the written consent of the **Company**, including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the **Company** to apply for or furnish any such bond;

C.    all costs taxed against an **Insured** in defense of a **claim**; and

D.    all interest on the entire amount of any judgment which accrues after entry of the judgment and before the **Company** has paid that part of the judgment which does not exceed the limits of liability stated in Section II A. above.

**Claim expenses** with respect to a **claim** will be paid first and payment will reduce the amount available to pay **damages**.  **Claim expenses** do not include fees, costs or expenses of employees or officers of the **Company**, other than fees, costs and expenses charged by the **Company's** employed attorneys who may be designated to represent the **Insured**, with the **Insured's** prior consent.  Nor shall **claim expenses** include salaries, loss of earnings or other remuneration by or to any **Insured**.

"**Client network damage claim**" means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services alleging that a **security breach** or **electronic infection** caused **network damage** to a client's **network** in the rendering of **legal services.**

"**Company**" means the insurance company named in the Declarations.

© CNA  All Rights Reserved.

**"Computer virus"** means unauthorized computer code that is designed and intended to transmit, infect and propagate itself over one or more **networks**, and cause:

A.      a computer code or programs to perform in an unintended manner;
B.      the deletion or corruption of electronic data or software; or
C.      the disruption or suspension of a **network**.

**"Confidential commercial information"** means information that has been provided to the **Insured** by another, or created by the **Insured** for another where such information is subject to the terms of a confidentiality agreement or equivalent obligating the **Insured** to protect such information on behalf of another.

**"Crisis event"** means:

A.      death, departure or debilitating illness of a **Principal Insured**;
B.      dissolution of the **Named Insured**; or
C.      incident of workplace violence;

that the **Named Insured** reasonably believes will have a material adverse effect upon the **Named Insured's** reputation.

**"Crisis event expenses"** means reasonable fees, costs and expenses incurred by the **Named Insured** for consulting services provided by a public relations firm to the **Named Insured** in response to a **Crisis Event**.

**"Damages"** mean judgments, awards and settlements (including pre-judgment interest**)**, provided any settlements are negotiated with the assistance and approval of the **Company**.  Notwithstanding anything to the contrary contained herein, **Damages** also include those amounts the court is permitted to impose on a debt collector as set forth in 15USC§1692k(a).  **Damages** do not include:

A.      legal fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;
B.      civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;
C.      punitive or exemplary amounts;
D.      the multiplied portion of multiplied awards;
E.      injunctive or declaratory relief;
F.      any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order.

**"Denial of service attack"** means an attack executed over one or more **networks** or the **Internet** that is specifically designed and intended to disrupt the operation of a **network** and render a **network** inaccessible to authorized users.

"**Disciplinary Proceeding**" means any pending matter, including an initial inquiry, before a state or federal licensing board or a peer review committee to investigate charges alleging a violation of any rule of professional conduct in the performance of **legal services**.

**"Electronic infection"** means the transmission of a **computer virus** to a **network**, including without limitation, such transmission to or from the **Named Insured's network**.

**"Electronic information damage"** means the destruction, deletion or alteration of any information residing on the **network** of any third party.

"**Insured**" means the **Named Insured**, **predecessor firm** and the persons or entities described below:

A.      any lawyer (including a government affairs advisor or lobbyist), partnership, professional corporation, professional association, limited liability company or limited liability partnership who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or **employee**  of the **Named Insured** during the **policy period** shown in the Declarations;
B.      any lawyer previously affiliated with the **Named Insured** or a **predecessor firm** as a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee but only for **legal services** performed on behalf of the **Named Insured** or a **predecessor firm** at the time of such affiliation. The term "previously affiliated" as used herein does not include a lawyer who, during the **policy period** and

© CNA  All Rights Reserved.

while affiliated with the **Named Insured**: a) voluntarily ceases, permanently and totally, the private practice of law; or b) dies or becomes **totally and permanently disabled.**  Such an lawyer will be deemed to be an **Insured** under paragraph A. above;

C.    any lawyer, law firm, partnership, professional corporation, professional association, limited liability company or limited liability partnership who acts as Of Counsel to the **Named Insured** or any non-employee independent contractor attorney to the **Named Insured**, but only for **legal services** rendered on behalf of the **Named Insured** and only if a fee inured or, in the event of a contingency fee, would have inured, to the **Named Insured**.  No fee need inure to the **Named Insured** where eleemosynary (pro bono) **legal services** are rendered by such Of Counsel **Insured** where at the time of retention, there was approval by the appropriate committee or lawyer within the **Named Insured** that the matter would be handled without compensation. Any lawyer, law firm, partnership, professional corporation, professional association, limited liability company or limited liability partnership who previously qualified as an **Insured** under paragraph A. above, but gave up the position of partner, officer, director, stockholder-employee, associate, manager, member or **employee** to act exclusively as Of Counsel to the **Named Insured**, will be deemed to be an **Insured** under paragraph A. above;

D.    any person who is a former or current employee, other than an employed lawyer, of the **Named Insured** or any **predecessor firm**, but solely for services performed by such person within the course and scope of their employment by the **Named Insured** or any **predecessor firm** and provided that the services in dispute are **legal services** of the **Named Insured** or any **predecessor firm**;

E.    the estate, heirs, executors, administrators, assigns and legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Policy; and

F.    the spouse or domestic partner of an **Insured**, but only to the extent that such **Insured** is provided coverage under this Policy.

**"Internet"** means the worldwide public **network** of computers as it currently exists or may be manifested in the future, but **Internet** does not include the **Named Insured's network**.

**"Legal services"** mean:

A.    those services, including eleemosynary (pro bono) services, performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or other neutral fact finder or as a notary public.  Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy;

B.    those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services;

C.    those services performed by an **Insured** in the capacity as a member, director or officer of any professional legal association, including any Bar Association and any similar organization or association, its governing board or any of its committees;

D.    those services performed by an **Insured** as an expert witness, provided that such **Insured** was retained to offer expert opinion on issues related to the law, legal procedure or practice, or the legal profession; or

E.    those services performed by an **Insured** as an author or publisher of legal research papers or legal materials or the presenter of legal seminars or materials, but only where such services are performed without compensation or compensation attributable per publication, presentation or seminar is less than $25,000.

"**Named Insured**" means the persons and entities designated in the Declarations.

**"Network"** means a party's local or wide area network owned or operated by or on behalf of or for the benefit of that party; provided, however, **network** shall not include the **Internet**, telephone company networks, or other public infrastructure network.

**"Network Damage"** means:

A.    the unscheduled and unplanned inability of an authorized user to gain access to a **network**;

B.    **electronic information damage**; or

C.    the suspension or interruption of any **network**.

**"Non-public personal information"** means personal information not available to the general public from which an individual may be identified, including without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, and account histories.

© CNA  All Rights Reserved.

**"Personal injury"** means an injury arising out of: false arrest, detention, or imprisonment; wrongful entry, or eviction, or other invasion of the right of private occupancy; libel, slander, or other disparaging or defamatory materials; a writing or saying in violation of an individual's right to privacy; malicious prosecution or abuse of process.

**"Policy period"** means the period of time between the inception date and time shown in the Declarations and the date and time of termination, expiration or cancellation of this Policy.

**"Predecessor firm"** means any sole proprietorship, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership engaged in **legal services** and:
A.   to whose financial assets and liabilities the firm listed as the **Named Insured** in the Declarations is the majority successor in interest;
B.   of which the **Named Insured** retained 50% or more of the lawyers; or
C.   was previously deemed to be a predecessor firm under the lawyers professional liability policy issued by the **Company** immediately preceding this Policy.

**"Principal Insured"** means an **Insured** member of the board of managers, director, executive officer, natural person partner, owner of a sole proprietorship, principal, risk manager or in-house general counsel of the **Named Insured**.

**"Prior insurer"** means an insurer, including the **Company** and any subsidiary or affiliate of the **Company**, who has issued a lawyers professional liability insurance policy that is applicable to a **claim**, such policy having an inception date prior to the **policy period**.

**"Privacy breach notice law"** means any statute or regulation that requires an entity who is the custodian of **non-public personal information** to provide notice to individuals of any actual or potential privacy breach with respect to such **non-public personal information**. **Privacy breach notice laws** include Sections 1798.29 and 1798.82-1798.84 of the California Civil Code (formerly S.B. 1386) and other similar laws in any jurisdiction.

**"Privacy claim"** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services and alleging **privacy injury and identity theft** that occurred in the rendering of **legal services**.

**"Privacy injury and identity theft"** means:
A.   any unauthorized disclosure of, inability to access, or inaccuracy with respect to, **non-public personal information** in violation of:
   1.   the **Named Insured's privacy policy**; or
   2.   any federal, state, foreign or other law, statute or regulation governing the confidentiality, integrity or accessibility of **non-public personal information**, including but not limited, to the Health Insurance Portability and Accountability Act of 1996, Gramm-Leach-Bliley Act, Children's Online Privacy Protection Act, or the EU Data Protection Act.
B.   the **Insured's** failure to prevent **unauthorized access** to **confidential commercial information**;

**"Privacy policy"** means the **Named Insured's** policies in written or electronic form that:
A.   govern the collection, dissemination, confidentiality, integrity, accuracy or availability of **non-public personal information**; and
B.   the **Insured** provides to its clients, customers, employees or others who provide the **Insured** with **non-public personal information.**

**"No Liability"** means that with respect to an **Insured** who is the subject of a **Disciplinary Proceeding**, there is a:
A.   final determination of no liability;
B.   a determination of no further action; or
C.   the matter is abandoned by the disciplinary authority.
In no event shall the term "**No Liability"** apply to a **Disciplinary Proceeding** for which a settlement has occurred.

**"Related acts or omissions"** mean all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**"Related claims"** mean all **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services**.

© CNA  All Rights Reserved.

**"Security breach"** means the failure of the **Named Insured's network** hardware, software, firmware, the function or purpose of which is to:
A.      identify and authenticate parties prior to accessing the **Named Insured's network**;
B.      control access to the **Named Insured's network** and monitor and audit such access;
C.      protect against **computer viruses**;
D.      defend against **denial of service attacks** upon the **Named Insured** or unauthorized use of the **Named Insured's network** to perpetrate a **denial of service attack**; or,
E.      ensure confidentiality, integrity and authenticity of information on the **Named Insured's network**.

**"Totally and permanently disabled"** means that an **Insured** is so disabled as to be wholly prevented from rendering **legal services** provided that such disability:
A.      has existed continuously for not less than six (6) months; and
B.      is reasonably expected to be continuous and permanent.

**"Unauthorized access"** means any accessing of information in the **Insured's** care, custody or control by unauthorized persons or by authorized persons accessing or using such information in an unauthorized manner.

**Unauthorized access** also includes:
A.      theft from the **Insured** of any information storage device used by the **Insured** to:
    1.      store and retrieve information on the **Insured's network**; or
    2.      transport information between the **Insured** and authorized recipients;
B.      any unauthorized use by the **Insured** of information in the **Insured's** clients' care, custody or control if accessed by the **Insured** in the course of rendering **legal services**.

IV.      EXCLUSIONS

This Policy does not apply:

A.      Intentional Acts

to any **claim** based on or arising out of any dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by an **Insured** except that:
1.      this exclusion shall not apply to **personal injury;**
2.      the **Company** shall provide the **Insured** with a defense of such **claim** unless or until the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not.  Such defense will not waive any of the **Company's** rights under this Policy.  Criminal proceedings are not covered under this Policy regardless of the allegations made against any **Insured**;
3.      this exclusion will not apply to any **Insured** who is not found to have personally committed the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by any trial verdict, court ruling, or regulatory ruling.

B.      **Bodily Injury**/Property Damage

 to any **claim** for **bodily injury**, or injury to, or destruction of, any tangible property, including the loss of use resulting therefrom except that this exclusion of **bodily injury** does not apply to mental injury, mental anguish, mental stress,  humiliation or emotional distress caused by **personal injury**;

C.      Status as Beneficiary or Distributee

to any loss sustained by an **Insured** or **claim** made against an **Insured** as beneficiary or distributee of any trust or estate;

D.      Contractual Liability

to any **claim** based on or arising out of an **Insured**'s alleged liability under any oral or written contract or agreement, unless such liability would have attached to any **Insured** in the absence of such agreement;

E.       **Insured** vs. **Insured**

© CNA  All Rights Reserved.

to any **claim** by or on behalf of an **Insured** under this Policy against any other **Insured** hereunder unless such **claim** arises out of **legal services** by an **Insured** rendered to such other **Insured** as a client;

F.      Capacity as Director, Officer, Fiduciary

to any **claim** based on or arising out of an **Insured's** capacity as:
1.      a former, existing or prospective officer, director, shareholder, partner, manager or member (or any equivalent position) of any entity if such entity is not named in the Declarations; or
2.      a trustee of a pension, welfare, profit-sharing, mutual or investment fund or investment trust; or
3.      a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other similar state or local law;
except that this exclusion does not apply to a **claim** based on or arising out of an **Insured's** capacity as a member, director or officer of any professional legal association, including any Bar Association and any similar organization or association, its governing board or any of its committees.

G.      Capacity as Public Official

to any **claim** based on or arising out of an **Insured**'s capacity as a public official or an employee or representative of a governmental body, subdivision or agency unless such **Insured** is deemed as a matter of law to be a public official or employee or representative of such entity solely by virtue of rendering **legal services** to it;

H.      Owned Entity

to any **claim** based on or arising out of **legal services** performed, directly or indirectly,  for any entity not named in the Declarations, if at the time of the act or omission giving rise to the **claim**, the percentage of ownership interest, direct or indirect, in such entity by any **Insured,** or an accumulation of **Insureds,** exceeded 10%.

V.      CONDITIONS

A.      Notice

1.      Notice of **Claims**

The **Insured**, as a condition precedent to the obligations of the **Company** under this Policy, shall as soon as reasonably possible after learning of a **claim** give written notice to the **Company** during the **policy period** of such **claim**.  The **Company** agrees that the **Insured** may have up to, but not to exceed, sixty (60) days after the Policy expiration to report a **claim** made against the **Insured** during the **policy period** if the reporting of such **claim** is as soon as reasonably possible.

2.      Notice of Potential **Claims**

If during the **policy period** the **Insured** becomes aware of any act or omission that may reasonably be expected to be the basis of a **claim** against the **Insured** and gives written notice to the **Company** of such act or omission and the reasons for anticipating a **claim**, with full particulars, including but not limited to:
a.      the specific act or omission;
b.      the dates and persons involved;
c.      the identity of anticipated or possible claimants;
d.      the circumstances by which the **Insured** first became aware of the possible **claim**,
then any such **claim** that arises out of such reported act or omission and that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made at the time such written notice was given to the **Company**.

© CNA  All Rights Reserved.

B.      Reimbursement of the **Company**

Subject always to the **Insured's** right to consent to settlement, as set forth in Section I. INSURING AGREEMENT, paragraph C, Settlement, if the **Company**, in the exercise of its discretion and without any obligation to do so, pays any amount within the amount of the deductible, the **Named Insured**, or upon the **Named Insured's** failure to pay, the **Insureds**, jointly and severally, shall be liable to the **Company** for any and all such amounts and, upon demand, shall pay such amounts to the **Company**.

C.      Territory

This Policy applies to an act or omission taking place anywhere in the world, provided that the **claim** is made and suit is brought against the **Insured** within the United States of America, including its territories, possessions, Puerto Rico or Canada.

D.      Other insurance

If there is other insurance that applies to the **claim**, this insurance shall be excess over such other valid and collectible insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise.  When there is such other insurance, the **Company** will pay only its share of the amount of any **damages** and **claim expenses**, if any, that exceed the sum of:

1.      the total amount that all such other insurance would pay for with respect to such **claim** in the absence of this insurance; and

2.      the total of all deductible and self-insured amounts under all that other insurance.

This paragraph does not apply to any other insurance that was bought specifically to apply in excess of the Limits of Liability shown in the Declarations of this Policy.

When this insurance is excess, the **Company** will have no duty under this Policy to defend the **Insured** against any **claim** if any other insurer has a duty to defend the **Insured** against that **claim**. If no other insurer defends, the **Company** will undertake to do so, but it will be entitled to the **Insured's** rights against all those other insurers.

E.      Assistance and cooperation of the **Insured**

1.      The **Insured** shall cooperate with the **Company** and, upon the **Company**'s request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with a **claim**.
2.      The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim**.
**3.**      The **Insured** shall not, except at its own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the consent of the **Company.**

F.      Action against the **Company**

No action shall lie against the **Company** by any third party, unless, as a condition precedent thereto:
1.      there shall have been full compliance with all the terms of this Policy; and
2.      the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Company**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.  No person or organization shall have any right under this Policy to join the **Company** as a party to any action against an **Insured**, nor shall the **Company** be impleaded by the **Insured** or his legal representative.

© CNA  All Rights Reserved.

G.   Bankruptcy or Insolvency

Bankruptcy or insolvency of the **Insured** or of the **Insured**'s estate shall not relieve the **Company** of any of its obligations hereunder.

H.   Subrogation

In the event of any payment under this Policy, the **Company** shall be subrogated to all the **Insured**'s rights of recovery thereof against any person or organization.  The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights.  The **Insured** shall do nothing to prejudice such rights.

I.   Changes

Notice to any of the **Company's** agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this Policy.  It also will not prevent the **Company** from asserting any rights under the provisions of this Policy.  None of the provisions of this Policy will be waived, changed or modified except by written endorsement, signed by the **Company**, issued to form a part of this Policy.

J.   Assignment

No assignment of interest of the **Insured** under this Policy shall be valid, unless the written consent of the **Company** is endorsed hereon.

K.   Cancellation/ Nonrenewal

1.   This Policy may be canceled by the **Named Insured** by returning it to the **Company**.  The **Named Insured** may also cancel this Policy by written notice to the **Company** stating at what future date cancellation is to be effective.
2.   The **Company** may cancel or non-renew this Policy by written notice to the **Named Insured** at the address last known to the **Company**.  The **Company** will provide written notice at least sixty (60) days before cancellation or non-renewal is to be effective.   If the **Company** cancels this Policy because the **Insured** has failed to pay a premium when due or has failed to pay amounts in excess of the limit of the **Company**'s liability or within the amount of the deductible, this Policy may be canceled by the **Company** by mailing to the **Named Insured** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective.  The time of surrender of this Policy or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**.   Delivery (where permitted by law) of such written notice either by the **Named Insured** or by the **Company** shall be equivalent to mailing.
3.   If the **Company** cancels this Policy, the earned premium shall be computed pro rata.  If the **Named Insured** cancels this Policy, the **Company** shall retain the customary short rate proportion of the premium.  Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.
4.   The offering of terms and conditions different from the expiring terms and conditions shall not constitute a refusal to renew.

L.   Entire contract

By acceptance of this Policy the **Insured** agrees that:
1.   all of the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all of the **Insureds**;
2.   this Policy is issued in reliance upon the **Insured's** representations;
3.   this Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

© CNA  All Rights Reserved.

4.   the misrepresentation of any material matter by the **Insured** or the **Insured's** agent will render this Policy null and void and relieve the **Company** from all liability herein.

M.   **Named Insured** sole agent

The **Named Insured** shall be the sole agent of all **Insureds** hereunder for the purpose of effecting or accepting any notices hereunder, any amendments to or cancellation of this Policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this Policy, and the exercising or declining to exercise any right under this Policy.

N.   Liberalization

If the **Company** adopts any revision that would broaden coverage under this policy form G-118011-A without additional premium at any time during the **policy period,** the broadened coverage will immediately apply to this Policy except that it will not apply to **claims** that were first made against the **Insured** prior to the effective date of such revision.

O.   Notices

Any notices required to be given by an **Insured** shall be submitted in writing to the **Company** or its authorized representative.  If mailed, the date of mailing of such notice shall be deemed to be the date such notice was given and proof of mailing shall be sufficient proof of notice.

P.   Trade and Economic Embargoes

This policy does not provide coverage for **Insureds**, transactions or that part of **damages** or **claims expenses** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

VI.   **EXTENDED REPORTING PERIODS**

As used herein, "**extended reporting period**" means the period of time after the end of the **policy period** for reporting **claims** that are made against the **Insured** during the applicable **extended reporting period** by reason of an act or omission that occurred prior to the end of the **policy period** and is otherwise covered by this Policy.

A.   Automatic **extended reporting period**

If this Policy is canceled or non-renewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy.  This automatic extended reporting period will terminate after sixty (60) days.

B.   Optional **extended reporting period**

1.   If this Policy is canceled or non-renewed by either the **Company** or by the **Named Insured**, then the **Named Insured** shall have the right to purchase an optional **extended reporting period**. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing:
a.   written notice to the **Company**; and
b.   with the written notice, the amount of additional premium described below.

2.   The additional premium for the optional **extended reporting period** shall be based upon the rates for such coverage in effect on the date this Policy was issued or last renewed and shall be for one (1) year at 100% of such premium; two (2) years at 150% of such premium; three (3) years at 175% of such premium; six (6) years at 225% of such premium; or, for an unlimited period at 250% of such premium.

3.   The premium for the optional **extended reporting period** is due on its effective date. This optional **extended reporting period** is non-cancelable and the entire premium shall be deemed fully earned at its commencement without any obligation by the **Company** to return any portion thereof.

© CNA  All Rights Reserved.

C.      Death or disability **extended reporting period**

    1.      If an **Insured** dies or becomes **totally and permanently disabled** during the **policy period**, then upon the latter of the expiration of: the **policy period**; any renewal or successive renewal of this Policy; or any automatic or optional **extended reporting period,** such **Insured** shall be provided with a death or disability **extended reporting period** as provided below.

        a.      In the event of death, such **Insured**'s estate, heirs, executors or administrators must, within sixty (60) days of the expiration of the **policy period**, provide the **Company** with written proof of the date of death.

        b.      If an **Insured** becomes **totally and permanently disabled**, such **Insured** or **Insured**'s legal guardian must, within sixty (60) days of the expiration of the **policy period**, provide the **Company** with written proof that such **Insured** is **totally and permanently disabled**, including the date the disability commenced, certified by the **Insured**'s physician. The **Company** retains the right to contest the certification made by the **Insured**'s physician, and it is a condition precedent to this coverage that the **Insured** agree to submit to medical examinations by any physician designated by the **Company** at the **Company's** expense. This **extended reporting period** is provided until such **Insured** shall no longer be **totally or permanently disabled** or until the death of such **Insured** in which case subparagraph a. hereof shall apply.

    2.      No additional premium will be charged for any death or disability **extended reporting period**.

D.      Non-practicing **extended reporting period**

    1.      If an **Insured** retires or otherwise voluntarily ceases, permanently and totally, the "private practice of law" during the **policy period** and has been continuously insured by the **Company** for at least three (3) consecutive years, then such **Insured** shall be provided with an **extended reporting period** commencing upon the latter of the expiration of: the **policy period**; any renewal or successive renewal of this Policy; or any automatic or optional **extended reporting period**.

    2.      This **extended reporting period** is provided until such **Insured** shall resume the "private practice of law" or until the death of such **Insured** in which case subparagraph C.1.a. hereof shall apply.

    3.      No additional premium will be charged for any non-practicing **extended reporting period**.

As used herein, the "private practice of law" means the practice of law performed by an **Insured** for a fee, including hourly, contingent or lump sum, as a sole practitioner or as a partner, officer, director, stockholder-employee, associate, manager, member or employee, of a law firm, or any agreement to act as an independent contractor or "Of Counsel" to a law firm. "Private practice of law" does not include the practice of law by an **Insured** on an eleemosynary (a pro bono) basis or services performed by an **Insured** solely as a mediator or arbitrator.

E.      **Extended reporting periods** limits of liability and deductibles

    1.      Automatic and optional **extended reporting periods** limits of liability and deductibles

        a.      Where the **Company** has the right to nonrenew or cancel this Policy, and it exercises that right, then the **Company**'s liability for all **claims** reported during the automatic and optional **extended reporting periods** shall be part of and not in addition to the limits of liability for the **policy period** as set forth in the Declarations and Section II.A. and B. of this Policy. The deductible applicable to such **claims** shall be part of and not in addition to the deductible as set forth in the Declarations and Section II.C. of this Policy.

        b.      If this Policy is canceled by the **Named Insured** or if the **Company** offers to renew this Policy, and the **Named Insured** refuses such renewal offer, then the **Company's** liability for all **claims** reported during the automatic and optional **extended reporting periods** shall be reinstated to the limits of liability applicable to this Policy as set forth in the Declarations and Section II.A. and B. of this Policy. The deductible applicable to such **claims** shall be reinstated to an amount equal to the deductible as set forth in the Declarations and Section II.C. of this Policy.

    2.      Separate death or disability and non-practicing **extended reporting period** limits of liability

© CNA  All Rights Reserved.

a.   Limit of Liability - Each "**Claim**"

Subject to paragraph B. below, the **Company's** limit of liability for each **claim** first made against the **Insured** and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period** shall not exceed the amount stated in the Declarations as the "Each **Claim** Death or Disability and Non-Practicing **extended reporting period** limit of liability".

b.   Limit of Liability - In the Aggregate

The limit of liability of the **Company** for all **claims** first made against the **Insured** and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period** shall not exceed the amount stated in the Declarations as the "Aggregate Death or Disability and Non-Practicing **extended reporting period** limit of liability".

c.   No Deductible

No deductible shall apply to **claims** first made against the **Insured** and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period**.

F.   Elimination of right to any **extended reporting period**

There is no right to any **extended reporting period**:

1.   if the **Company** shall cancel or refuse to renew this Policy due to:
     a.   non-payment of premiums; or
     b.   non-compliance by an **Insured** with any of the terms and conditions of this Policy; or
     c.   any misrepresentation or omission in the application for this Policy; or,
2.   if during the **Policy Period** such **Insured's** right to practice law is revoked, suspended or surrendered at the request of any regulatory authority for reasons other than that the **Insured** is **totally and permanently disabled**.

G.   **Extended reporting period** not a new policy

It is understood and agreed that the **extended reporting period** shall not be construed to be a new policy and any **claim** submitted during such period shall otherwise be governed by this Policy.

VII.   HEADINGS

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

IN WITNESS WHEREOF, the **Company** has caused this Policy to be executed by its Chairman and Secretary, but this Policy shall not be binding upon us unless completed by the attachment of the Declarations.

Chairman                                    Secretary

© CNA  All Rights Reserved.



## WORLD WIDE COVERAGE ENDORSEMENT

It is understood and agreed that Section V, Conditions, Paragraph C., Territory, is deleted in its entirety and replaced by the following:

C.      Territory

This Policy applies to an act or omission taking place anywhere in the world regardless of where the **claim** or suit is brought.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____

(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

| | |
|---|---|
| G-118038-A (4-08) | Policy No:   198279108 |
| Page 1 | Endorsement No:   1 |
| Continental Casualty Company | Effective Date:   10/30/2015 |
| Insured Name: Cantor Colburn,LLP | |

© CNA  All Rights Reserved.



**RISK MANAGEMENT SERVICES AMENDATORY ENDORSEMENT**

It is hereby agreed that the **Named Insured** has a budget for Risk Management services up to $10,000 per **Policy Period**. Written approval must be obtained from the **Company** prior to conducting such services. With such approval, reimbursement will be made to the **Named Insured** upon completion of the approved risk management services and submission of an itemized bill.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL17467XX (2-10)
Page 1
Continental Casualty Company
Insured Name: Cantor Colburn,LLP

Policy No:   198279108
Endorsement No:   2
Effective Date:   10/30/2015

© CNA  All Rights Reserved.



**AMENDMENT OF TERMINATION PROVISIONS - CONNECTICUT**

It is understood and agreed that Condition K. Cancellation/Nonrenewal is deleted and replaced in its entirety by the following:

K.      Cancellation/Nonrenewal

     1.     Cancellation

          a.     This Policy may be canceled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this Policy by written notice to the **Company** stating at what future date cancellation is to be effective.

          b.     The **Company** may cancel this Policy by mailing, or by delivery of a written notice of cancellation to the **Named Insured** to the address last known to the **Company**. The **Company** will provide written notice at least 90 days before cancellation is to be effective. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Notice of cancellation will be delivered or sent by registered mail, certified mail, or by mail evidenced by a United States Post Office certificate of mailing.

          c.     If this Policy has been in effect for 60 days or more, or if it is a renewal of a policy issued by the **Company**, the **Company** may cancel only for one or more of the following reasons;
              (1)     Nonpayment of premium;
              (2)     Conviction of a crime arising out of acts which increases any hazard insured against;
              (3)     Material misrepresentation or fraud made by the **Named Insured** in obtaining this Policy or in pursuing a **claim** under this Policy;
              (4)     Discovery of any willful or reckless act or omission by the **Named Insured** which increases the hazard insured against;
              (5)     A determination by the Connecticut Commission of Insurance that continuation of this Policy would violate or would place the **Company** in violation of the insurance laws of Connecticut or any other state;
              (6)     A material increase in the hazard insured against; or
              (7)     A substantial loss of reinsurance by the **Company** affecting this line of insurance.

          d.     If the **Company** cancels for nonpayment of premium, the **Named Insured** may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

          e.     If the **Company** cancels this Policy, the earned premium shall be computed pro rata. If the **Named Insured** cancels this Policy, the **Company** shall retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

     2.     Nonrenewal

          a.     If the **Company** elects to nonrenew this Policy, the **Company** will mail, or deliver written notice of nonrenewal to the **Named Insured** at the address last known to the **Company**, at least 90 days prior to the expiration date of this Policy. Notice of nonrenewal will be delivered or sent by registered mail, certified mail, or by mail evidenced by a United States Post Office certificate of mailing.

---

G-118039-A06 (5-08)
Page 1
Continental Casualty Company
Insured Name: Cantor Colburn,LLP

Policy No:    198279108
Endorsement No:    3
Effective Date:    10/30/2015

© CNA  All Rights Reserved.



All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

G-118039-A06 (5-08)                                      Policy No:        198279108
Page 2                                                  Endorsement No:   3
Continental Casualty Company                            Effective Date:   10/30/2015
Insured Name: Cantor Colburn,LLP

© CNA  All Rights Reserved.



**AMENDATORY ENDORSEMENT - EXTENDED REPORTING PERIODS - CONNECTICUT**

It is understood and agreed that the Policy is amended as follows:

**I.**   The Section entitled **EXTENDED REPORTING PERIODS** is amended to include the following definition:

**Termination of coverage** means, whether made by the **Company** or by the **Named Insured** at any time: (1) cancellation or nonrenewal of a policy; or (2) decrease in limits, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the **Named Insured** during the **policy period**.

**II.**   The Section entitled **EXTENDED REPORTING PERIODS,** the subsection entitled Automatic **extended reporting period** is deleted in its entirety and replaced as follows:

Automatic **extended reporting period**

Upon **termination of coverage** of this Policy by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period**. This automatic **extended reporting period** will terminate after sixty (60) days.

**III.**   The Section entitled **EXTENDED REPORTING PERIODS**, the subsection entitled Optional **extended reporting period**, is revised as follows:

**A.**   Sub-paragraph B.1. is deleted and replaced in its entirety by the following:

1.   Upon **termination of coverage** of this Policy, the **Named Insured** shall have the right to purchase an optional **extended reporting period**. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** providing:
a.   written notice to the **Company**; and
b.   with the written notice, the amount of additional premium described below.

**B.**   Sub-paragraph B.2. is deleted and replaced in its entirety by the following:

2.   The additional premium for the optional **extended reporting period** shall be based upon the rates for such coverage in effect on the date this Policy was issued or last renewed and shall be for one (1) year at 100% of such premium; three (3) years at 175% of such premium; or, for an unlimited period at 200% of such premium.

**C.**   The following new paragraphs are added:

- Such optional **extended reporting period** coverage shall apply only in regard to the coverage terminated, and shall be made available on the same terms and conditions as those specified in this Policy.

- Where premium is due to the **Company** for coverage under this Policy, any monies received by the **Company** from the **Named Insured** as payment for the optional **extended reporting period** shall be first applied to such premium owing for this Policy.

- The optional **extended reporting period** coverage will not take effect until the premium owing for this Policy is paid in full and unless the premium owing for the optional **extended reporting period** is paid promptly when due.

- The **Company** will advise the **Named Insured** in writing of the automatic **extended reporting period** coverage and the availability of, the premium for, and the importance of purchasing additional **extended reporting period** coverage. This advice will be sent no earlier than the date

G118064A06 (6-15)
Page 1
Continental Casualty Company
Insured Name: Cantor Colburn,LLP

Policy No:   198279108
Endorsement No:   4
Effective Date:   10/30/2015

© CNA  All Rights Reserved.



of notification of **termination of coverage** nor later than fifteen (15) days after **termination of coverage**.

- The **Named Insured** shall have the greater of thirty (30) days from the effective date of **termination of coverage**, or fifteen (15) days from the date of mailing or delivery of the advice as noted above, to submit written acceptance of additional **extended reporting period** coverage.

**IV.**   The Section entitled **EXTENDED REPORTING PERIODS**, the subsection entitled **Extended reporting periods** limits of liability and deductibles, the subparagraph entitled Automatic and optional **extended reporting periods** limits of liability and deductibles, is deleted in its entirety and replaced as follows:

Automatic and optional **extended reporting periods** limits of liability and deductibles

Upon **termination of coverage**, the **Company's** liability for all **claims** reported during the optional **extended reporting period** shall be equal to the limits of liability for the **policy period** as set forth in the Declarations and in Section II. A. and B. of this Policy. The deductible applicable to such **claims** shall be equal to the deductible as set forth in the Declarations and Section II.C. of this Policy. The limit of liability for all **claims** reported during the automatic **extended reporting period** shall be part of and not in addition to the limits of liability for the **policy period** as set forth in the Declarations and Sections II.A. and B. of this Policy. The deductible applicable to such **claims** shall be part of and not in addition to the deductible as set forth in the Declarations and Section II. C. of this Policy.

**V.**   The Section entitled **EXTENDED REPORTING PERIODS**, the subsection entitled Elimination of right to any **extended reporting period**, is deleted in its entirety.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

Policy No:   198279108
Endorsement No:   4
Effective Date:   10/30/2015

© CNA  All Rights Reserved.



**MUTUAL CONSENT ENDORSEMENT**

It is understood and agreed that Section 1, Insuring Agreement, Paragraph B, is deleted in its entirety and replaced by the following:

B.      Defense

The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf, a **claim** covered by this Policy**,** even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** and the **Named Insured** shall mutually agree on the appointment of counsel to investigate and to defend any **claim**. If a **claim** shall be subject to arbitration or mediation, the **Company** and the **Named Insured** shall mutually agree on the choice of arbitrators or mediators and in the conduct of any arbitration or mediation proceeding involving a **claim** covered by the Policy. Either party's agreement to defense counsel, mediators or arbitrators shall not be unreasonably withheld.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.


By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

G-118023-A (4-08)
Page 1
Continental Casualty Company
Insured Name: Cantor Colburn,LLP

Policy No:      198279108
Endorsement No:   5
Effective Date:   10/30/2015

© CNA  All Rights Reserved.



**REINSTATEMENT ENDORSEMENT**

It is understood and agreed that Section II., LIMITS OF LIABILITY AND DEDUCTIBLE is amended by the addition of the following paragraph:

Upon the exhaustion of the aggregate limit of liability and any excess limits of liability, the aggregate limit of liability stated in the Declarations shall be reinstated and apply to **damages** and **claim expenses** for all **claims** first made against the **Insured** and reported to the **Company** during the **policy period**. In no event shall the **Company's** maximum liability under the Policy for all **claims**, including any reinstatements, exceed an aggregate amount equal to twice the aggregate limit of liability as set forth in the Declarations.

Notwithstanding the foregoing, the **Company's** liability under this Policy including any reinstatement, with respect to any one **claim** shall be limited to the each **claim** limit of liability as set forth in the Declarations.

All other terms and conditions of the policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.


By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL3019 (9-04)
Page 1
Continental Casualty Company
Insured Name: Cantor Colburn,LLP

Policy No:   198279108
Endorsement No:   6
Effective Date:   10/30/2015

© CNA  All Rights Reserved.



**EACH CLAIM AND IN THE AGGREGATE DEDUCTIBLE ENDORSEMENT**

In consideration of the premium paid, it is agreed that Item 4. of the Declarations is deleted and replaced in its entirety by the following:

| DEDUCTIBLE: (Inclusive of **claim expenses)** | EACH **CLAIM**: $75,000 |
|---|---|
| | IN THE AGGREGATE: $200,000 |

It is further agreed that Section II, LIMITS OF LIABILITY AND DEDUCTIBLE paragraph C, Deductible, is deleted in its entirety, and replaced with the following:

C.      Deductible - Each **Claim** and In the aggregate

Subject to the "aggregate" deductible, the "each **claim**" deductible amount stated in the Declarations is the total amount of the **Insured's** liability for each **claim**. It applies separately to each **claim**. The aggregate deductible amount stated in the Declarations is the total amount of the **Insured's** liability for all **claims**. The deductible applies to the payment of **damages** and **claim expenses** for **claims** first made and reported to the **Company** in writing during the **policy period**. The deductible shall be paid by the **Named Insured**, or upon the **Named Insured's** failure to pay, jointly and severally by all **Insureds**. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

© CNA  All Rights Reserved.



**CLAIMS PROCEDURES AMENDMENT ENDORSEMENT**

In consideration of the premium paid for this Policy, it is understood and agreed that Section I. INSURING AGREEMENT, Paragraph B. Defense, is deleted in its entirety and replaced with the following:

The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel from the below list and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

List of approved defense counsel:

Bai, Pollock, Blueweiss & Mulcahey, P.C.
Day Pitney, LLP
Goldberg Segalla, LLP
Yules & Yules, LLC
Carr Maloney, PC
Eccleston & Wolf
Troutman Sanders, LLP
Vorys Sater Seymour & Pease, LLP
Wiley Rein & Fielding
Williams & Connolly, LLP
Zuckerman Spaeder LLP
Carlock Copeland & Stair
Fields Howell Athans & McLaughlin, LLP
Hall Booth Smith & Slover
Hawkins & Parnell, LLP
Shapiro Fussell Wedge & Martin, LLP
Weinberg Wheeler Hudgins Gunn & Dial, LLC
Lipson Neilson Cole Seltzer & Garin, PC
Plunkett Cooney
Akin Gump Strauss Hauer & Feld, LLP
Roberts Markel Weinberg, PC
Vinson & Elkins, LLP

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL25759XX (1-11)
Page 1
Continental Casualty Company
Insured Name: Cantor Colburn,LLP

Policy No:   198279108
Endorsement No:   8
Effective Date:   10/30/2015

© CNA  All Rights Reserved.



# QUOTA SHARE ENDORSEMENT

It is understood and agreed that the Policy is amended as follows:

**I.**     The Declarations are amended as follows:

    **A.**     The Item entitled **LIMITS OF LIABILITY** is deleted in its entirety and replaced with the following:

        **TOTAL LIMITS OF LIABILITY FOR ALL PARTICPATING INSURERS**:
        *Inclusive of **claim expenses***

        Each **claim**: $15,000,000
        Aggregate: $30,000,000

        **TOTAL DEATH OR DISABILITY AND NON-PRACTICING EXTENDED REPORTING PERIOD LIMIT OF LIABILITY FOR ALL PARTICIPATING INSURERS**:
        *Inclusive of **claim expenses***

        Each **claim**: $1,000,000
        Aggregate: $2,000,000

    **B.**     The Item entitled **POLICY PREMIUM** is amended as follows:

        **1.**     The title **POLICY PREMIUM** is deleted in its entirety and replaced with **TOTAL POLICY PREMIUM**.

        **2.**     The following new information is added:

            •   **Company's** share of Total Policy Premium: $340,760

    **C.**     The Item entitled **WHO TO CONTACT** is amended by the addition of the following new information:

        To report a claim to Participating Insurers:
        CNA – Claims Reporting
        P.O. Box 8317
        Chicago, IL 60680-8317
        Fax: 866-773-7504 / Online: www.cna.com/claims
        Email: Largelawyersnewclaims@cna.com
        Lawyers Claim Reporting Questions: 800-540-0762

        Axis Pro Claims
        300 Connell Drive, Suite 8000
        P.O. Box 357
        Berkeley Heights, NJ 07922
        Facsimile: 908-508-4389
        Email: USClaimNoticeBH@axiscapital.com

**II.**     The Section of the Policy entitled LIMITS OF LIABILITY AND DEDUCTIBLE is amended by the addition of the following:

Quota Share Participation

Notwithstanding anything to the contrary in the Policy, this Policy has been written on a quota-share basis whereby the **Company** shall be responsible to pay **damages** and **claim expenses** on a proportionate basis equal to 66.667% of the total limits of liability shown on the Declarations, and the Participating Insurers, as set forth below, shall be responsible to pay **damages** and **claim expenses** on a proportionate basis equal to the

CNA80746XX (11-14)
Page 1
Continental Casualty Company
Insured Name: Cantor Colburn,LLP

Policy No:     198279108
Endorsement No:   9
Effective Date:   10/30/2015

© CNA  All Rights Reserved.



applicable percentage of such total limits of liability as set forth opposite each Participating Insurer in the Schedule below.

The **Company's** limit of liability for **damages** and **claim expenses** for each **claim** shall not exceed $10,000,000 per **claim**. The **Company's** maximum aggregate limit of liability for all **damages** and **claim expenses** for all **claims**, regardless of the number of **claims**, shall be $20,000,000.

Each Participating Insurer's proportion of the total limits of liability shown on the Declarations is as follows:

SCHEDULE

| Participating Insurer Name | Policy Number | Participating Percentage |
|---|---|---|
| Continental Casualty Company | 198279108 | 66.667% |
| Axis Insurance | MNN784137/01/2014 | 33.333% |

The **Company** and the Participating Insurers shall also pay supplementary payments, as set forth in the paragraph of this Section entitled Supplementary payments, in the same proportions stated above.

The liability of the **Company** and any Participating Insurers shall be several and not joint. The **Company** shall not be liable under this Policy for any amount in excess of its limits of liability, regardless of any changes in circumstances, including, but not limited to change in terms, cancellation, removal or bankruptcy of any other participants. If the **Company's** limits of liability are exhausted by payment of **damages** or **claim expenses**, the **Company's** obligations shall be deemed completely fulfilled and extinguished.

Coverage hereunder shall apply in conformance with the provisions set forth in this Policy.

III.   The Section of the Policy entitled CONDITIONS is amended as follows:

    A.   The paragraph entitled Notice is amended by the addition of the following:

        For the purposes of giving notice under subparagraphs A.1. and A.2. of this Section, such notice shall be given to the **Company** at the address stated in Item 7 of the Declarations and to the Participating Insurers stated above at the address set forth in paragraph I.C. above. Thereafter, the **Company** (or any substitute as may subsequently be appointed by the **Company** and advised to the **Insured**) shall act on behalf of all insurers with respect to any such **claim** or notice of potential **claim**.

    B.   The following new Condition is added:

        **Company** as Lead Participating Insurer

        With respect to all **claims**, the **Company** shall act as Lead Participating Insurer on behalf of all Participating Insurers. As Lead Participating Insurer, the **Company** will investigate, settle and defend **claims** and the Participating Insurers will follow and be bound by the actions taken by the **Company** regarding the handling and/or settlement of **claims**.

IV.   The Section of the Policy entitled **EXTENDED REPORTING PERIODS**, the subsection entitled **Extended reporting periods** limits of liability, the paragraph entitled Separate death or disability and non-practicing **extended reporting period** limits of liability, is amended by the addition of the following:

        Notwithstanding anything to the contrary in the Policy, the **Company** and the Participating Insurers shall be responsible to pay their respective shares of the each **claim** and aggregate death or disability and non-practicing **extended reporting period** limits of liability in the same proportions as set forth in paragraph II. of this endorsement.

---

CNA80746XX (11-14)
Page 2
Continental Casualty Company
Insured Name: Cantor Colburn,LLP

Policy No:   198279108
Endorsement No:   9
Effective Date:   10/30/2015

© CNA  All Rights Reserved.



All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA80746XX (11-14)
Page 3
Continental Casualty Company
Insured Name: Cantor Colburn,LLP

Policy No:       198279108
Endorsement No:  9
Effective Date:  10/30/2015

© CNA  All Rights Reserved.



**CANTOR COLBURN**
**FUTURE PER ATTORNEY RATE ENDORSEMENT**

It is understood and agreed that the Section of the Policy entitled CONDITIONS is amended to add the following new condition:

The **Company** will offer the per attorney rate of $6,158  for the October 30, 2016 to October 30, 2017 **policy period**, but only if:

1.      there is no material change at the **Named Insured** over the current **policy period** of October 30, 2015 to October 30, 2016 as to the **Named Insured's** risks and exposures; and

2.      the **Company** does not:

  a.      pay **damages** or **claim expenses** totaling more than $1,000,000 in response a **claim**;

  b.      pay **damages** or **claim expenses** in response to multiple **claims**, which, when added together, total more than $1,000,000; or

  c.      set a reserve in excess of $1,000,000 in response to a **claim**;

  over the current **policy period** of October 30, 2015 to October 30, 2016.

Notwithstanding the above, this endorsement is not a renewal guarantee. The **Named Insured** is required to provide a full renewal application at the October 30, 2016 renewal.


All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

Policy No:   198279108
Endorsement No:   10
Effective Date:   10/30/2015

© CNA  All Rights Reserved.